**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CYNTHIA CLARK-DEAN, | ) | CASE NO. 1:22-cv-01908 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY CONTRACTING | ) | |
| COMPANY, LLC, *et al.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | (Redacted) |
| Defendants. | ) | |

This matter is before the Court upon Defendants' Motion to Dismiss, or, in the

Alternative, Stay the Proceedings and Compel Arbitration (R. 11; R. 12). For the following

reasons, the Court GRANTS Defendants' Motion to Stay the Proceedings and Compel

Arbitration.

## I. Facts

Plaintiff Cynthia Clark-Dean is a former employee of Defendant University Contracting

Company, LLC (University Contracting), which operated a nursing facility and adult care home

where Plaintiff began working as a Licensed Practical Nurse on or around August 23, 2020, and

was supervised by Defendant Tara Miller (with University Contracting, Defendants). (R. 1,

PageID# 3 ¶¶ 17–18; R. 12, PageID# 115; R. 16-2, PageID# 251 ¶ 3). During her employment

with Defendant University Contracting, Plaintiff was approximately 60 years old and had

previously been diagnosed with lupus, which she had disclosed to Defendants. (R. 1, PageID# 3–

4 ¶¶ 20–21, 30–44). On July 19, 2021, Plaintiff submitted Family Medical Leave Act (FMLA)

paperwork, requesting leave in August 2021 related to complications from lupus. (*Id.*, PageID# 4

¶ 45).

On August 10, 2021, during her shift, Plaintiff responded to an incident at the facility involving an unresponsive resident. (*Id.*, PageID# 4–5 ¶¶ 47–52). After Plaintiff rushed back to the nurse's station to call a code blue, the responding Emergency Medical Technician determined that the resident "had been deceased for several hours prior to [Plaintiff's] shift." (*Id.*, PageID# 5 ¶¶ 55–58).

On August 16, 2021, Defendant Miller called Plaintiff in for a meeting with Human Resources and terminated Plaintiff's employment purportedly due to Plaintiff's violations of the company's policies and procedures in connection to the resident's death. (*Id.*, PageID# 5–6 ¶¶ 65–73). Plaintiff alleges that Defendants' reasons for termination were pretextual and that in reality, Plaintiff was terminated due to Defendants' discrimination based on Plaintiff's age and disability, and in retaliation for her FMLA leave request. (*Id.*, PageID# 7 ¶¶ 82–90).

## II. Procedural Background

Plaintiff's Complaint, filed on October 24, 2022, alleges counts against Defendant University Contracting for age discrimination in violation of the Age Discrimination in Employment Act (ADEA) and Ohio Revised Code § 4112.01, disability discrimination in violation of the Americans with Disabilities Act (ADA) and Ohio Revised Code § 4112.01, unlawful interference with FMLA rights, and retaliation in violation of the FMLA. (*Id.*, PageID# 7–14 ¶¶ 91–155, 161–177). Plaintiff also alleges against Defendant Miller a count for aiding and abetting in violation of Ohio Revised Code § 4112.02(J). (*Id.*, PageID# 12–13 ¶¶ 156–160).

With leave of the Court, Defendants filed both a sealed and redacted Motion to Dismiss or, in the Alternative, Stay the Proceedings and Compel Arbitration. (R. 11; R. 12). Briefing on the Motion is complete. (R. 15; R. 16). During the Court's Case Management Conference with

the parties, the Court stayed the proceedings pending the Court's consideration of the Motion.

(R. 20, PageID# 320).

### III. Standard of Review

Defendants' Motion moves the court to compel arbitration of Plaintiff's claims and stay

all proceedings in this matter. (R. 12). In determining whether to grant a motion to dismiss or

stay proceedings and compel arbitration, the Court must consider four factors:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must
> determine the scope of that agreement; third, if federal statutory claims are
> asserted, it must consider whether Congress intended those claims to be
> nonarbitrable; and fourth, if the court concludes that some, but not all, of the
> claims in the action are subject to arbitration, it must determine whether to stay
> the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005), *cert. denied,* 546 U.S. 1214 (2006)

(*quoting Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)); *see also Patnik v. Citicorp*

*Bank Tr. FSB*, 412 F. Supp. 2d 753, 758 (N.D. Ohio 2005) (*citing Fazio v. Lehman Bros., Inc.*,

340 F.3d 386, 392 (6th Cir. 2003)) (same). The first step, then, is to determine whether the parties

agreed to arbitrate their disputes.

### IV. Discussion

Federal law strongly favors the enforcement of valid arbitration clauses for dispute

resolution. The primary substantive provision of the Federal Arbitration Act (FAA) reflects

"both a 'liberal federal policy favoring arbitration,' *Moses H. Cone* [*Mem. Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24 (1983)], and the 'fundamental principle that arbitration is a matter

of contract,' *Rent-A-Center, West, Inc. v. Jackson*, [561 U.S. 63, 67] (2010)." *AT&T Mobility*

*LLC v. Concepcion*, 563 U.S. 333, 339 (2011). As a matter of contract law, then, the Act "does

not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of*

*Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–220 (1985)); *see also AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Garrett v. Hooters-Toledo*, 295 F. Supp. 2d 774, 778 (N.D. Ohio 2003).

The Supreme Court has instructed that, when deciding whether the parties agreed to arbitrate a matter, courts generally should apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The Ohio Supreme Court has described the principles to be applied when considering the applicability of an arbitration clause, as follows:

> In *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648, the United States Supreme Court summarized four general principles, developed in prior decisions of that court, to be applied when considering the reach of an arbitration clause. The essence of these general principles, set out primarily in the "*Steelworkers* Trilogy" (*Steelworkers v. Am. Mfg. Co.* [1960], 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *Steelworkers v. Warrior & Gulf Navigation Co.* [1960], 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *Steelworkers v. Enterprise Wheel & Car Corp.* [1960], 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424) is pertinent to our review, and provides a framework for our inquiry.

> The first principle is that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." *AT&T Technologies*, 475 U.S. at 648-649, 106 S.Ct. at 1418, 89 L.Ed.2d at 655, quoting *Warrior & Gulf, supra*, 363 U.S. at 582, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417.

> The second principle is that "the question of arbitrability – whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.*, 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.

4

The third rule is, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.*, 475 U.S. at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.

The fourth principle is that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.*, 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656, quoting *Warrior & Gulf, supra*, 363 U.S. at 582-588, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417.

*Council of Smaller Enters. v. Gates, McDonald & Co.*, 687 N.E.2d 1352, 1355–56 (Ohio 1998).

In examining a motion to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-HAUL Co. of Mass. and Ohio, Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (*quoting Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)).

Defendants allege that on July 30, 2020, as a condition of Plaintiff's employment with University Contracting, Plaintiff signed a Mutual Dispute Resolution Agreement (Arbitration Agreement). (R. 12, PageID# 115–116). That document provides, in relevant part:

> Other than as provided in this Agreement, to the maximum extent permissible under federal law, Employee and the Company agree that any controversy, dispute, or claim arising out of or related to Employee's employment with the Company that could otherwise be raised in court ("Covered Claim") that the Company has against Employee or the Employee has against the Company, shall be settled exclusively by binding arbitration rather than in court. It is the parties' intent that all claims between them covered by this Agreement are to be resolved through binding arbitration to the fullest extent permitted by federal law (and state law that is not preempted by federal law), not an administrative proceeding or court.

(R. 12-1, PageID# 161–162). The Arbitration Agreement further defines "Covered

Claims" as:

> Covered Claims include, but are not limited to, claims for wages and other compensation, breach of contract, any multi-plaintiff class, collective or representative actions, joint or consolidated claims, misappropriation of trade secrets or unfair competition, violation of public policy, wrongful termination; tort claims; claims for unlawful retaliation, discrimination and/or harassment; and claims for violation of any federal, state, or other government law, statute, regulation, or ordinance, such as, for example, claims under the Age Discrimination in Employment Act, the Americans with Disabilities Act; Title VII of the Civil Rights Act of 1964; the Equal Pay Act; the Fair Credit Reporting Act; the Fair Labor Standards Act; the Family and Medical Leave Act; the Pregnancy Discrimination Act; the Rehabilitation Act; Section 1981 through 1988 of Title 42 of the United States Code; and the Worker Adjustment and Retraining Notification Act.

(*Id.*). The Agreement defines the "Company" as "Saber Healthcare Group, LLC, its current or former officers, directors, members, employees, vendors, clients, customers, agents, parents, subsidiaries, affiliated companies, successors, or assigns." (*Id.*, PageID# 161).

Plaintiff asserts three arguments that the Arbitration Agreement is not enforceable, all of which pertain to whether the parties agreed to arbitrate their claims. First, Plaintiff denies signing the Arbitration Agreement. (R. 15, PageID# 217–219). Second, Plaintiff contends that because the purported agreement was with "Saber Healthcare Group, LLC"—not her employer Defendant University Contracting—there was no agreement to arbitrate between Plaintiff and her employer. (*Id.*, PageID# 219–223). Third, Plaintiff argues that the Arbitration Agreement is rendered unenforceable by an unconscionable cost-splitting provision. (*Id.*, PageID# 223–226). The Court considers each argument in turn.

### A. Arbitration Agreement Signature

As relevant here, the Arbitration Agreement contains the electronic signature of

"CYNTHIA G. CLARK . . .", and is dated July 30, 2020. (R. 12-1, PageID# 164). Below Plaintiff's purported signature is what appears to be a handwritten signature for a representative of the "Company," with a corresponding date of April 29, 2020. (*Id.*). The crux of Plaintiff's first argument is that (i) Defendants have failed to substantiate that Plaintiff signed the Arbitration Agreement, and (ii) the electronic signature on the document does not carry the same force as a handwritten signature. (R. 15, PageID# 217–219). In support of her argument, Plaintiff presents an affidavit explaining that in July 2020, she filled out her employment application paperwork for Defendant University Contracting by hand—not on a computer—and that she did not type her name on the Arbitration Agreement. (R. 15-1, PageID# 228 ¶¶ 4–6).

However, persuasive precedent from the Southern District of Ohio severely undercuts Plaintiff's argument. In *Nealey v. Heritage Oaks Management Enterprises USA, LLC*, 2020 WL 2507332 (S.D. Ohio May 15, 2020), the court rejected a similar argument and explained that the plaintiff's "self-serving" affidavit that she never signed the arbitration agreement was "insufficient to raise a question of material fact regarding the validity of the arbitration agreement." *Id*. at *3. That was especially true since the defendant in *Nealey* submitted an affidavit from a human resources manager establishing that the plaintiff was required to, and did, complete the new employee paperwork, including the document containing the arbitration agreement, prior to receiving a paycheck. *Id.* The *Nealey* defendant's affidavit also included other details about the employee onboarding process, including that each new employee was required to provide his or her Social Security Number, phone number, and birth date, and complete the necessary paperwork online. *Id*. As a result, the *Nealey* court held that there was

7

sufficient evidence that the plaintiff did, in fact, sign the arbitration agreement. *Id.* at *4.

Here, Defendants provide multiple affidavits detailing the employee onboarding process, supporting that Plaintiff signed the Arbitration Agreement. First, there is the affidavit of Gerald Cox, a Human Resources Generalist employed by Saber Healthcare, LLC (Saber), who has personal knowledge of the employee onboarding process for entities "affiliated" with Saber,[1] including Defendant University Contracting. (R. 16-1, PageID# 249 ¶¶ 3, 5). Mr. Cox explains that in July 2020, Defendant University Contracting required new employees to complete onboarding paperwork, including the Arbitration Agreement. (*Id.* ¶¶ 7, 9). And in another affidavit, Kevin Ritz, an administrator employed by Defendant University Contracting, testifies that he has knowledge of the content of personnel files for employees of University Contracting, including Plaintiff. (R. 16-2, PageID# 251 ¶¶ 2–3, 5). Attached to Mr. Ritz's affidavit are sixteen documents that Plaintiff apparently electronically signed on July 30, 2020, as part of her employee onboarding process. (R. 16-2, PageID# 251–252 ¶ 7). Each of these sixteen documents bears the same electronic signature—including Plaintiff's name and the date July 30, 2020—as the Arbitration Agreement. (*Compare* R. 12-1, PageID# 164, *with* R. 16-2, PageID# 253, 266, 275, 277, 281, 282, 283, 284, 288, 290, 298, 299, 300, 302, 304, 307).

Like the situation in *Nealey*, there is substantial evidence that Plaintiff electronically signed the Arbitration Agreement during her onboarding process with Defendant University Contracting, even if she does not recall doing so. Plaintiff's self-

---

[1]  The Court recognizes that Saber's alleged "affiliation" with Defendant University Contracting is at issue, which the Court discusses further below.

serving affidavit that she does not remember signing the document does not create a dispute of material fact in the face of Defendant University Contracting's evidence that Plaintiff was required to complete electronic paperwork—including the Arbitration Agreement—before beginning her job with Defendant.[2] And despite Plaintiff's argument to the contrary, "electronic signatures are binding under Ohio law." *Nealey*, 2020 WL 2507332, at *3 (*quoting* Ohio Rev. Code. § 1306.06 ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form. . . . A contract may not be denied legal effect or enforceability solely because an electronic record was

_____

[2] As the instant Motion was pending, Plaintiff filed a Notice of Supplemental Authority directing the Court's attention to a recent Sixth Circuit decision, *Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795 (6th Cir. 2023). (R. 21). Plaintiff asserts that the holding in *Bazemore* requires the Court to find a genuine dispute of material fact that she entered into the Arbitration Agreement because she has provided an affidavit indicating that she did not type her name onto the Agreement. (*Id.*, PageID# 322). Defendants filed a response to Plaintiff's Notice, arguing that *Bazemore* is distinguishable because it applies Kentucky law, which is materially different from Ohio law on this subject. (R. 22). After carefully reviewing *Bazemore* and the law in Ohio, the Court finds the Defendants' position persuasive.

In *Bazemore*, the Sixth Circuit considered a Fair Labor Standards Act (FLSA) claim that the appellant brought against his employer. *Bazemore*, 74 F.4th at 797. At issue was whether the appellant entered into an arbitration agreement with his employer that would compel the arbitration of his FLSA claim. *Id.* Applying Kentucky law, the court held that an affidavit from the appellant swearing that he had never so much as seen the arbitration agreement in question created a genuine issue of material fact whether he entered into the agreement. *Id.* at 797–98.

But Ohio law applies in this case, which leads to a different conclusion. Under Ohio law, a party may not avoid summary judgment by merely submitting an affidavit contradicting the evidence of the moving party. *See Wells Fargo Bank v. Blough*, 2009 WL 2220065, at *4 (Ohio Ct. App. July 23, 2009) ("[A party's] self-serving affidavit that denies his agreement is insufficient to demonstrate the existence of a genuine issue of material fact."); *Barich v. Scheidler Med. Grp., L.L.C.*, 2015 WL 6472405, at *3 (Ohio Ct. App. Oct. 26, 2015) ("Again, as this court has repeatedly stated, the evidence necessary to create a genuine issue of material fact must be more than just bare, unsupported assertions contained within a self-serving affidavit."); *Greaney v. Ohio Turnpike Comm'n*, 2005 WL 2416659, at *3 (Ohio Ct. App. Sept. 30, 2005) ("This court has previously held that a nonmoving party may not avoid summary judgment by merely submitting a self-serving affidavit contradicting the evidence offered by the moving party."). Since the Court must apply Ohio law and Plaintiff's only evidence that she did not sign the Agreement is her self-serving affidavit, *Bazemore* is distinguishable to the facts of this case.

used in its formation.")). Plaintiff's reliance on *Toth v. GSE Mortgage Corp.*, 2017 WL 2472500 (N.D. Ohio June 8, 2017) is misplaced. (R. 15, PageID# 217–218). In that case, the court determined that there was a genuine dispute of material fact as to the enforceability of an arbitration agreement where the plaintiff denied signing the agreement *and* the defendants did not provide any evidence about the general onboarding process that called into question the plaintiff's assertion. *Toth*, 2017 WL 2472500, at *2. Here, as mentioned above and unlike *Toth*, Defendants provided substantial evidence indicating that Plaintiff did, in fact, execute the Arbitration Agreement, among many other documents, before beginning her employment with Defendant University Contracting.

  As a result of the foregoing analysis, Plaintiff's first argument fails.

   B. <u>Saber's Relationship to Defendant University Contracting</u>

10



### C. Cost-Splitting Provision

Finally, Plaintiff argues that the Arbitration Agreement is unenforceable because it contains an unconscionable cost-splitting provision. (R. 15, PageID# 223–226; R. 12-1, PageID# 163). However, Plaintiff overlooks the fact that the Arbitration Agreement contains a severability provision which states, "If any part of this Agreement is held to be invalid, void, or unenforceable, it shall be interpreted in a manner or modified to make it enforceable. If that is not possible, it shall be severed and the remaining provisions of this Agreement shall remain in full force and effect." (R. 12-1, PageID# 164). Assuming,

without deciding, that Plaintiff is correct that the cost-splitting provision is unenforceable, the Court has the authority to sever that provision, meaning that the remainder of the Arbitration Agreement would be enforceable. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 674–75 (6th Cir. 2003) (en banc).

As a result, Plaintiff's third and final argument fails, and the Court holds that the parties agreed to arbitrate their claims pursuant to the Arbitration Agreement.

### D. Remaining Factors and Staying the Action

There is no dispute that the Arbitration Agreement covers Plaintiff's claims. As mentioned above, the Arbitration Agreement applies to "any controversy, dispute, or claim arising out of or related to Employee's employment with the Company," including claims for unlawful retaliation and discrimination, and claims under the ADEA, ADA, and FMLA. (R. 12-1, PageID# 161). All of Plaintiff's claims, *see supra*, which relate to her employment and termination from Defendant University Contracting, fall squarely within the scope of the Arbitration Agreement. There is also no argument that federal law provides that any of Plaintiff's claims are non-arbitrable. Therefore, the Court holds that it must compel arbitration as to all of Plaintiff's claims, pursuant to the terms of the Arbitration Agreement.

The only question remaining for the Court, then, is whether to stay or dismiss the proceedings. The FAA provides, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such

arbitration." 9 U.S.C. § 3. However, the Sixth Circuit acknowledges, without itself explicitly adopting, an approach from other circuits regarding the court's ability to dismiss an entire action "where it is clear the entire controversy between the parties will be resolved by arbitration." *Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 380 (*quoting Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011)). But the Sixth Circuit has also held that a district court may abuse its discretion in deciding to dismiss an entire action where a party argues that it could face statute of limitations issues if it must refile the suit. *Id.*

Plaintiff requests that the Court stay the action if it finds that the matter should be arbitrated, considering that she may face statute of limitations issues if she is forced to file a new claim with the American Arbitration Association. (R. 15, PageID# 226). Moreover, Defendants' Motion alternatively requests a stay of the proceedings and compulsion of arbitration, meaning that Defendants do not oppose a stay. (R. 12, PageID# 122). As a result, the Court holds that the proceedings in this matter are stayed pending the arbitration of Plaintiff's claims.

### V. Conclusion

Defendants' Motion to Stay the Proceedings and Compel Arbitration (R. 11; R. 12) is GRANTED. Defendants' Motion to Dismiss (R. 11; R. 12) is DENIED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 29, 2023

14